IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **LAWRENCE LORENZO PRIOR**, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 2:17cv590 |
| | ) | **Electronic Filing** |
| **PITTSBURGH POLICE** et al, **JOSHUA ROBEY** Pittsburgh Police Officer, **LUCIUS SCHWEITZER** Pittsburgh Police Officer, **MARK GOOB** Pittsburgh Police Officer, **SCOTT LOVE** Pittsburgh Police Officer, **JOSEPH BARNA** Pittsburgh Police Officer, | ) ) ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

## **MEMORANDUM ORDER**

AND NOW, this 19th day of March, 2020, in accordance with the discussions and explanations provided to counsel for both parties at the status conference held on April 25, 2019, IT IS ORDERED that [29] defendants' motion for summary judgment be, and the same hereby is, granted. Final judgment in favor of defendants and against plaintiff will be entered by separate order.

Federal Rule of Civil Procedure 56 provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(A). Rule 56 "'mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" Marten v. Godwin, 499 F.3d 290, 295 (3d Cir. 2007) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986)). Deciding a summary judgment motion requires the court to view the facts, draw all

reasonable inferences and resolve all doubts in favor of the nonmoving party. Doe v. Cnty. of Centre, Pa., 242 F.3d 437, 446 (3d Cir. 2001).

The moving party bears the initial burden of identifying evidence which demonstrates the absence of a genuine issue of material fact. When the movant does not bear the burden of proof on the claim, the movant's initial burden may be met by demonstrating the lack of record evidence to support the opponent's claim. Nat'l State Bank v. Fed. Reserve Bank of New York, 979 F.2d 1579, 1581-82 (3d Cir. 1992). Once that burden has been met, the non-moving party must set forth "specific facts showing that there is a *genuine issue for trial*," or the factual record will be taken as presented by the moving party and judgment will be entered as a matter of law. Matsushita Electric Industrial Corp. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(E)) (emphasis in Matsushita). An issue is genuine only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In meeting its burden of proof, the "opponent must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586. The non-moving party "must present affirmative evidence in order to defeat a properly supported motion" . . . "and cannot simply reassert factually unsupported allegations." Williams v. Borough of West Chester, 891 F.2d 458, 460 (3d Cir. 1989). Nor can the opponent "merely rely upon conclusory allegations in [its] pleadings or in memoranda and briefs." Harter v. GAF Corp., 967 F.2d 846, 852 (3d Cir. 1992); Sec. & Exch. Comm'n v. Bonastia, 614 F.2d 908, 914 (3d Cir. 1980) ("[L]egal conclusions, unsupported by documentation of specific facts, are insufficient to create issues of material fact that would preclude summary judgment."). Likewise, mere conjecture or speculation by the party resisting summary judgment will not provide a basis upon which to deny the motion. Robertson v. Allied Signal, Inc., 914 F.2d 360,

382-83 n.12 (3d Cir. 1990). If the non-moving party's evidence is merely colorable or lacks sufficient probative force summary judgment may be granted. Anderson, 477 U.S. at 249-50; see also Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992), cert. denied, 507 U.S. 912 (1993) (although the court is not permitted to weigh facts or competing inferences, it is no longer required to "turn a blind eye" to the weight of the evidence).

The record as read in the light most favorable to plaintiff establishes the backdrop that follows. On April 29, 2015, plaintiff delivered heroin to an undercover detective as part of a controlled purchase. The transaction occurred after dark in the Sugar Top area of the Hill District neighborhood in the City of Pittsburgh. Plaintiff exited the vehicle after making the sale, and a number of officers approached in a van in an effort to arrest plaintiff. Plaintiff fled from the officers who were exiting the van.

Plaintiff proceeded through some backyards, jumped over a fence and traversed down into a wooded and overgrown area. At least two of the named officers were in pursuit. As they came closer they were shouting verbal commands at plaintiff such as "Pittsburgh Police, Stop." Plaintiff proceeded to a steep, dangerous area that was overgrown and covered with vines.

Plaintiff continued to flee until he came to the top of a cliff created by a high retaining wall. At the bottom was a flat backyard of a house facing another street in the neighborhood. Plaintiff stopped at the edge of the wall and continued to look over at the yard below. He went to put his hands up in response to the pursuing officers' commands. He felt an officer's hands make contact with his back, just above the belt line, and then went over the ledge. One of the officers yelled "oh fuck" as plaintiff departed from the ledge. Plaintiff's leg was severely fractured upon contact with the ground.

Plaintiff's back was toward the officers the entire time he was at/on the edge of the cliff/retaining wall. He was unsure whether they were trying to grab him. He could not say that the officers pushed him or intentionally caused him to fall from the edge.

Three officers approached plaintiff after he fell. One had his gun drawn and another was trying to restrain plaintiff. One of the officers got on top of plaintiff and was trying to restrain and handcuff him. One of the officers was pushing plaintiff's head toward the ground. Plaintiff was screaming to get peoples' attention. The officers were unable to retrieve plaintiff's left arm to complete the arrest because it was under his body and plaintiff did not make it immediately available. One officer delivered a knee strike to plaintiff's left side. Another officer delivered approximately five hammer fists to plaintiff's right buttocks area in order to get plaintiff to give up his hands. The officers were then able to pull plaintiff's left hand out from underneath his body.

No more than a few minutes elapsed between the time plaintiff went over the edge and his apprehension. Plaintiff gave a false name when he was apprehended. He was placed in a police car and medics were called after the injury to his leg was discovered. Plaintiff was thereafter transported to the emergency room.

Claims of excessive force in the context of an arrest or other "seizure" are to be analyzed under the Fourth Amendment. Rivas v. City of Passaic, 365 F.3d 181, 198 (3d Cir. 2004); Sharrar v. Felsing, 128 F.3d 810, 820 (3d Cir.1997) ("When an 'excessive force claim arises in the context of an arrest or investigatory stop of a free citizen, it is most properly characterized as one invoking the protections of the Fourth Amendment ....'") (quoting Graham v. Connor, 490 U.S. 386, 394 (1989)). "The proper test for evaluating an excessive force claim is therefore one of objective reasonableness," id., which "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an

immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Id. at 821; accord Couden v. Duffy, 446 F.3d 483, 497 (3d Cir. 2006) (same). "Other factors include 'the duration of the [officer's] action, whether the action takes place in the context of effecting an arrest, the possibility that the suspect may be armed, and the number of persons with whom the police officers must contend at one time.'" Couden, 446 F.3d at 497 (quoting Sharrar v. Felsing, 128 F.3d 810, 822 (3d Cir. 1997)). The question is whether, under the totality of the circumstances, the officers' actions objectively were reasonable in light of facts and circumstances confronting them, without regard to their underlying intent or motivations. Kopec v. Tate, 361 F.3d 772, 776 (3d Cir.2004); Graham, 490 U.S. at 397.

An officer's actions must be evaluated from the perspective of a reasonable officer on the scene. Rivas, 365 F.3d at 198; Lamont v. New Jersey, No. 09–1845, 2011 WL 753856, at *5 (3d Cir. Mar. 4, 2011). In undertaking this inquiry, the "calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments -- in circumstances that are tense, uncertain, and rapidly evolving -- about the amount of force that is necessary in a particular situation." Graham, 490 U.S. at 396-97; Couden, 446 F.3d at 497. In conducting this analysis "the court should not apply 'the 20/20 vision of hindsight,' but should instead consider the 'perspective of a reasonable officer on the scene.'" Couden, 446 F.3d at 497.

As previously explained, the record as developed through discovery will support at best a finding that an officer was negligent in reaching for plaintiff after the chase had come to a stop at the top of the retaining wall. Plaintiff admits that he does not have evidence to prove there was exertion of force with the intent to cause plaintiff to go over the edge or even that the officer was deliberately indifference to the use of force that would bring about such a result. And it is

5

beyond reproach that mere negligence resulting in injury will not without more support § 1983 liability.

Moreover, plaintiff had been actively resisting arrest as he fled and sought to elude the officers right up until his chosen course resulted in him finding himself precariously perched at the edge of the cliff. He still had his back to the officers and was facing the drop off. They had just witnessed him engage in felony drug-trafficking. Plaintiff actively was attempting to flee. The officers were unable to ascertain whether he had a weapon. He merely began to raise his arms. It was dark and the officers did not have the benefit of daylight. Under these circumstances the force of grabbing at plaintiff in the middle of the back right above the belt line is not a type of force beyond the form of battery the officers were authorized by law to employ. In other words, it was not a type of force that could be found to be outside the Fourth Amendment's boundaries for the reasonable use of force in effectuating an arrest. Cf. Peele v. Township of West Deptford Police Dept., 2011 WL 550617, *5 (D. New Jersey, Feb. 9, 2011) ("It is well settled that '[p]olice officers are privileged to commit a battery pursuant to a lawful arrest.'") (quoting Groman v. Twp. of Manalapan, 47 F.3d 628, 634 (3d Cir. 1995)).

The same is true of the force applied once plaintiff found himself on the ground after going over the ledge. Plaintiff had just committed a felony drug-trafficking offense, fled from the officers on the scene and the officers had not been able to verify whether he had a weapon. Plaintiff did not comply with the officers' commands. He continued to keep his hands underneath his body and refused to submit to the force being applied to effectuate the arrest. He continued to raise his head and scream. Given the totality of the circumstances, the nature of the crime and plaintiff's course of conduct thereafter, and the uncertainty of the situation, the officers did not apply a level of force that can be found to be unreasonable and excessive under the Fourth Amendment.

Plaintiff's efforts to shoehorn this case in to the single-incident exception for municipal liability under Monell equally is wide of the mark. Whether a municipal entity can be held liable under § 1983 is governed by the doctrine announced in Monell v. Department of Social Services of the City of New York, 436 U.S. 658 (1978). There, the Supreme Court held that "[a] municipality or other local government may be liable under § 1983 if the governmental body itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation." Connick v. Thompson, 563 U.S. 51, 131 S.Ct. 1350, 1359 (2011) (quoting Monell, 436 U.S. at 692). However, such entities "are responsible only for 'their own illegal acts' [and] are not vicariously liable for the acts of their employees." Id. (quoting Pembaur v. Cincinnati, 475 U.S. 469, 479 (1986)). In other words, liability against such an entity may not be established by the *respondeat superior* doctrine, but instead must be founded upon evidence indicating the government itself supported a violation of the plaintiff's constitutional rights. Monell, 436 U.S. at 694; see also Bielevicz v. Dubinon, 915 F.3d 845, 849-50 (3d Cir. 1990) ("municipal liability attaches only when 'execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury.'") (quoting Monell, 436 U.S. at 694).

In order to establish municipal liability a plaintiff must prove that "action pursuant to official municipal policy caused the deprivation" of a federal right. Connick, 131 S. Ct. at 1359 (quoting Monell, 436 U.S. at 691). Official municipal policy includes formal policy, acts of official policymakers and "practices so persistent and widespread as to have the force of law." Id. (collecting cases); accord Kelly v. Borough of Carlisle, 622 F.3d 248, 263 (3d Cir.2010) (To rise to the level of a policy a custom or practice must be "so permanent and well settled as to virtually constitute law."). "These are 'actions for which the municipality is actually responsible.'" Connick, 131 S. Ct. at 1359 (quoting Pembaur, 475 U.S. at 479-80).

7

Proving a government policy or custom can be accomplished in a number of different ways. Bielevicz, 915 F.2d at 850. "Policy is made when a 'decisionmaker possessing final authority to establish municipal policy with respect to the action' issues an official proclamation, policy or edict." Andrews v. City of Philadelphia, 895 F.2d 1469, 1480 (3d Cir. 1990) (quoting Pembaur, 475 U.S. at 481). Custom, in contrast, can be proven by demonstrating that a given course of conduct, although not specifically endorsed or authorized by state or local law, is so well-settled and permanent as virtually to constitute law. Id. (citing Fletcher v. O'Donnell, 867 F.2d 791, 793-94 (3d Cir.) ("Custom may be established by proof of knowledge and acquiescence."), cert. denied, 42 U.S. 919 (1989)).

A local government's "decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy" in limited circumstances. Connick, 131 S.Ct. at 1359. But "a municipality's culpability for depriving rights is at its most tenuous where a claim turns on a failure to train." Id.; see also Oklahoma City v. Tuttle, 471 U.S. 808, 822–23, (1985) (plurality opinion) ("[A] 'policy' of 'inadequate training'" is 'far more nebulous, and a good deal further removed from the constitutional violation, than was the policy in Monell.'"). Accordingly, proving liability based on a failure to train requires a showing that in establishing the policy the municipality was "deliberate[ly] indifferen[t] to the rights of persons with whom the [untrained employees] come into contact." Id. (quoting City of Canton, Ohio v. Harris, 489 U.S. 378, 388 (1989)). "Only then 'can such a shortcoming be properly thought of as a [municipal] 'policy or custom' that is actionable under § 1983.'" Id. at 1359-60 (quoting Canton, 489 U.S. at 389). It also requires a showing that the lack of training actually caused the constitutional violation in question. Id. at 1358; id. at 1368 (Alito, J., concurring) ("But in any event, to recover from a municipality under 42 U.S.C. § 1983, a plaintiff must satisfy a 'rigorous' standard of causation . . . ; he must demonstrate a direct causal

link between the municipal action and the deprivation of federal rights.") (quoting Board of County Commissioners of Bryan County v. Brown, 520 U.S397, 404-05 (1997)). These standards are designed to assure that municipal liability under § 1983 does not collapse into *respondeat superior* liability. Id. at 1364 ("As our precedent makes clear, proving that a municipality itself actually caused a constitutional violation by failing to train the offending employee presents 'difficult problems of proof,' and we must adhere to a 'stringent standard of fault,' lest municipal liability under § 1983 collapse into *respondeat superior*.") (quoting Bryan County, 520 U.S. at 406); accord Reitz v. County of Bucks, 125 F.3d 139, 145 (3d Cir. 1997) ("When a plaintiff alleges that a municipality has not directly inflicted an injury, but has caused an employee to do so, stringent standards of culpability and causation must be applied to ensure that the municipality in a § 1983 suit is not held liable solely for the conduct of its employee.").

"'Deliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." Connick, 131 S.Ct. at 1359 (quoting Bryan County, 520 U.S. at 410). Municipal policymakers are required to be on actual or constructive notice that a particular omission in the entity's training is causing employees to violate citizens' constitutional rights. Id. at 1360 (citing Bryan County, 520 U.S. at 410). It is the decision not to change course after gaining such notice that propels the adherence to the chosen course of action, in effect a "policy of inaction," to the "functional equivalent of a decision by the [policymakers] to violate the Constitution." Id. (quoting Canton, 489 U.S. at 395 (O'Connor, J., concurring in part and dissenting in part)). In other words, "[p]olicymakers' 'continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees may establish the conscious disregard for the consequences of their action — the 'deliberate indifference' — necessary to trigger municipal liability." Id. (quoting Bryan County, 520 U.S. at 407). "Without notice that a course of training is deficient in a particular

respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights."[1]  Id.

"A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train."  Id. (quoting Bryan County, 520 U.S. at 409).  This can be done by presenting evidence of similar constitutional violations by employees of which the policymaker was or should have been aware.  Id. at 1360-61.  The violations must be of sufficient similarity to impute notice of an actual pattern; mere notice of multiple violations of a constitutional right in differing ways will not suffice.  Id. at 1360.

Here, plaintiff contends that the geographical terrain of the Pittsburgh region presents numerous situations where officers might be required to effectuate an arrest at dangerous heights.  And despite these readily anticipated situations, the City of Pittsburgh has not presented its police force with training on how to arrest suspects safely in such dangerous situations.  From plaintiff's perspective, this lack of training directly played a causal role in bringing about his injury.

Contrary to plaintiff's position, the potential for a violation of a constitutional right from arresting fleeing suspects at locations that present a dangerous risk due to height is not so readily apparent that a reasonable official would recognize that such a suspect's constitutional right to be free from excessive force under the Fourth Amendment would surely (or even likely) be violated without specific training involving such scenarios.  Nor has plaintiff come forward with evidence

---

[1] Requiring a less stringent standard would result in "*de facto respondeat superior* liability on municipalities."  Id. (quoting Canton, 489 U.S. at 392 and citing Pembaur v. Cincinnati, 475 U.S. 469, 483 (1986) (opinion of Brennan, J.) ("[M]unicipal liability under § 1983 attaches where – and only where – a deliberate choice to follow a course of action is made from among various alternative by [the relevant] officials …")).

that is capable of placing the City of Pittsburgh on notice that on multiple occasions in the past such circumstances have arisen and created a risk that the arrestees' Fourth Amendment rights against excessive force were violated. And even assuming that such scenerios clearly should have been contemplated, plaintiff has not provided sufficient evidence to support a finding that the lack of training played a meaningful causal role in or would have precluded plaintiff from going over the wall.

Given these circumstances, a scenario for the single-incident exception to the rigorous <u>Monell</u> standards that the Supreme Court repeatedly has referenced has not been presented here. It follows that plaintiff lacks sufficient evidence to establish the elements for <u>Monell</u> liability and the City of Pittsburgh is entitled to summary judgment on plaintiff's claim for failure to train.

<u>s/David Stewart Cercone</u>
David Stewart Cercone
Senior United States District Judge

cc: Adrian N. Roe, Esquire and Samuel H. Simon, Esquire – as Directors of the Duquesne University School of Law Federal Litigation Clinic

Julie E. Koren, Esquire

(*Via CM/ECF Electronic Mail*)

Lawrence Lorenzo Prior
HY-9725
SCI Forest
Post Office Box 945
Marienville, PA 16239

(*Via First Class Mail*)